# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SSC NY CORP. f/k/a SUNRISE SECURITIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> COMPUTERSHARE INC., <br><br> Defendant. | Index No. <br><br> **SUMMONS** |

To:   Computershare Inc.
1290 Avenue of the Americas, 9th Floor
New York, New York 10104
Attn: Steven Rothbloom, CEO

You are hereby summoned and required to serve upon Plaintiff's attorney an answer to the complaint in this action within 20 days after service of this summons, exclusive of the day of service, or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York. In the case of your failure to answer, judgment will be entered against you by default for the relief demanded in the complaint.

Plaintiff designates New York County as the place of trial. The basis for this designation is the residence of one or both of the parties, pursuant to CPLR § 503(a). Plaintiff's address is: 152 West 57th Street, 19th Floor, New York, New York 10019.

Dated: New York, New York
         October 14, 2021

AMINI LLC

/s/ Jeffrey Chubak
Lita Beth Wright
Jeffrey Chubak
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
*Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SSC NY CORP. f/k/a SUNRISE SECURITIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> COMPUTERSHARE INC., <br><br> Defendant. | Index No. <br><br> **COMPLAINT** |

Plaintiff SSC NY Corp. f/k/a Sunrise Securities Corp. ("Sunrise"), as and for its complaint against Defendant Computershare Inc. ("Computershare"), hereby alleges:

### NATURE OF ACTION

1. Non-party Inveshare Inc. ("Inveshare") was a technology company that provided shareholder communications services within the United States.

2. Sunrise is a judgment creditor of Inveshare and is owed over $4 million on account of its judgment all of which is unpaid. The judgment was entered on a cause of action for breach of contract; specifically, a placement agreement they had entered into in 2011.

3. In September 2016, Inveshare sold substantially all of its assets to non-party Broadridge Financial Solutions Inc. ("Broadridge") in exchange for $90 million.

4. Upon the closing of the transaction, Inveshare distributed the sale proceeds to its investors, in derogation of the rights of its creditors. The investors included Computershare, which in 2013 and 2014 had invested $20 million in exchange for 40% of the equity interests in Inveshare.

5. After distributions to investors were made, Inveshare wound down its business, and by mid-2019 it closed its bank accounts.

6. This is an action to recover the value of Sunrise's judgment from Computershare, pursuant to Article 10 of the Debtor and Creditor Law ("DCL").

## THE PARTIES

7. Sunrise is a New York corporation, whose principal office is located at 152 West 57th Street, 19th Floor, New York, New York 10019.

8. Computershare is a Delaware corporation, whose principal office is located at 150 Royall Street, Canton, Massachusetts 02021.

## BACKGROUND

9. Computershare entered into to a Stock Purchase Agreement with Inveshare, dated April 12, 2013, pursuant to which it acquired 25% of the equity interests in Inveshare in exchange for $10 million.

10. Computershare entered into a second Stock Purchase Agreement with Inveshare, dated May 30, 2014, pursuant to which it acquired an additional 15% of the equity interests in Inveshare in exchange for $10 million.

11. Upon the closing of the two transactions, Computershare held 40% of the equity interests in Inveshare.

12. The first Stock Purchase Agreement gave Computershare the right to appoint directors, and it appointed 2 to Inveshare's 4-person board of directors.

13. Pursuant to the second Stock Purchase Agreement, Inveshare's bylaws were amended to give Computershare the right to designate a "Private Label Operations Officer" of Inveshare who, absent the occurrence of an "Operational Trigger", may attend any "meetings of the senior operations managers of [Inveshare, and receive] all matters provided to such managers." Under the bylaws, upon the occurrence of an "Operational Trigger" such officer would "have full authority to direct the operations of Inveshare", including the right "to (i) deploy employees of Computershare 'on site' at the corporation's offices, (ii) provide direction to the corporation's employees and third party vendors and (iii) make such changes to the manner in which the

corporation's business is operated to rectify the problem causing the Operational Trigger …" and the right to "override the operational decisions of all officers and senior managers of the corporation" including the CEO, President and COO. Inveshare's charter was also amended to prohibit the removal or modification of this provision, or the removal of the Private Label Operations Officer.

14. In its 2016 annual report, Computershare stated Inveshare had incurred $7.2 million in loan obligations to Computershare and described the obligations as "Loans to associates."

15. On September 16, 2016, Broadridge announced that it had acquired the technology assets of Inveshare in exchange for an upfront payment of $90 million.

16. Broadridge had also agreed to make a deferred payment of $40 million on delivery of certain blockchain applications; however, no attempt to develop the blockchain applications was ever made and so no portion of the $40 million was ever paid.

17. On September 16, 2016, the above-referenced $90 million was wired to Inveshare.

18. On the same date, Inveshare made 5 payments to Computershare totaling $33.1 million.

19. The payments were applied to the outstanding loan balance, and payments in excess thereof were booked as gains from the disposition of the equity interests. Computershare stated in its 2017 annual report, that "Inveshare Inc. was disposed during the reporting period. A post-tax gain of $9.3 million was recorded on the disposal."

20. In total, Inveshare paid over $90 million to holders of its equity interests in the second half of September 2016, and was left with insufficient cash to develop the blockchain applications called for under its agreement with Broadridge, or otherwise continue its pre-closing business.

21. After Inveshare completed making distributions to investors, it wound down its business. By mid-2019, Inveshare had closed its bank accounts; and on January 17, 2020, its counsel in the Sunrise litigation moved to withdraw for refusal to communicate and failure to pay $68,111 in attorneys' fees.

22. On February 3, 2020, the Court permitted counsel's withdrawal and warned judgment would be entered absent entry of an appearance by substitute counsel. No substitute counsel appeared; and so, on June 15, 2020, the Court held Inveshare to be in default and directed that judgment be entered in favor of Sunrise.

23. On July 27, 2020, the Clerk entered judgment in favor of Sunrise and against Inveshare in the amount of $3,961,587.25. To date, no portion of the judgment has been paid.

**FIRST CAUSE OF ACTION**
**Actual Fraudulent Conveyance**

24. Sunrise repeats and realleges Paragraphs 1-23 as if fully set forth and incorporated herein.

25. Inveshare made the September 16, 2016 payments to Computershare with actual intent to hinder, delay or defraud its present or future creditors, including Sunrise.

26. Multiple badges of fraud are present. A close relationship existed between Inveshare and Computershare, in that Computershare was one of Inveshare's largest shareholders, appointed half its board and had additional management and governance rights. Indeed, Computershare is an acknowledged affiliate ("associate") of Inveshare and is appropriately considered an insider.

27. Inveshare had knowledge of Sunrise's claim, the docket sheet in Sunrise's action against Inveshare being replete with pre-transfer email traffic concerning the same.

28. Inveshare sold substantially all of its assets at the same time it made the subject payments.

29. Inveshare became insolvent soon after the subject payments were made, its having distributed substantially all remaining sale proceeds to its investors following the closing of the Broadridge transaction.

30. The subject payments to Computershare were accordingly fraudulent as to Sunrise, under DCL § 276.

31. Judgment should be entered in favor of Sunrise and against Computershare in the amount of Sunrise's judgment against Inveshare (inclusive of post-judgment interest), plus attorneys' fees pursuant to DCL § 276-a, costs and prejudgment interest.

## SECOND CAUSE OF ACTION
### Constructive Fraudulent Conveyance

32. Sunrise repeats and realleges Paragraphs 1-31 as if fully set forth and incorporated herein.

33. The September 16, 2016 payments to Computershare were made without fair consideration, under DCL § 272. No property was given by Computershare in exchange for the subject payments; and no antecedent debt was satisfied thereby except loan obligations amounting to a small fraction of the subject payments. Further, the subject payments were not made in good faith in that Computershare was an insider of Inveshare on account of its equity interests, director appointments and management and governance rights.

34. Inveshare became insolvent soon after the subject payments were made, its having distributed substantially all remaining sale proceeds to its investors following the closing of the Broadridge transaction.

35. The subject payments were made when Inveshare was engaged or about to engage in transactions for which the property remaining in its hands after such conveyances amounted to an unreasonably small capital.

36. Inveshare intended or believed, when the subject payments were made, that it would incur debts beyond its ability to pay as the matured, including payment obligations to Sunrise on account of their placement agreement.

37. The subject payments to Computershare were accordingly fraudulent as to Sunrise, under DCL §§ 273, 274 and 275.

38. Judgment should be entered in favor of Sunrise and against Computershare in the amount of Sunrise's judgment against Inveshare (inclusive of post-judgment interest), plus costs and prejudgment interest.

WHEREFORE, judgment should be entered against Computershare, in the amount of Sunrise's judgment against Inveshare (inclusive of post-judgment interest), plus attorneys' fees pursuant to DCL § 276-a, costs and prejudgment interest; and Sunrise should be granted such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 14, 2021

AMINI LLC

/s/ Jeffrey Chubak
Lita Beth Wright
Jeffrey Chubak
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
*Attorneys for Plaintiff*